NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEIL L. MOORE, : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | Civil Action No. 05-3525 (DMC) |
| CORRECTIONAL MEDICAL : | |
| SERVICES, et al. : | |
| Defendant. | |

      This matter comes before the Court upon motion by Defendants Lydell Sherrer and Karen D. Willoughby ("Defendants") to dismiss, or in the alternative for summary judgment, against *pro se* Plaintiff Neil L. Moore ("Plaintiff"). Because Defendants have presented to this Court matters outside the pleadings, the motion will be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After carefully considering the submission of the parties and based upon the following, it is the finding of this Court that Defendants' motion is **granted**.

## I. BACKGROUND

      Plaintiff is an inmate at Mid-State Correctional Facility in Wrightstown, New Jersey. On July 13, 2005, he filed a federal civil rights Complaint pursuant to 42 U.S.C. § 1983 against the Department of Corrections, the State of New Jersey, Northern State Prison, Lydell Sherrer, Administrator of Northern State Prison, and Karen Willoughby, Director in the Division of Operation of the New Jersey Department of Correction. He simultaneously filed an application to proceed in forma pauperis. Plaintiff alleged various violations of his Eighth and Fourteenth

Amendment rights.  On July 27, 2005, this Court screened the Complaint pursuant to 28 U.S.C. § 1915 and dismissed Plaintiff's claims against the Department of Corrections, the State of New Jersey and Northern State Prison, but permitted his claims to proceed as to Sherrer and Willoughby, and added Dr. John Godinsky as a Defendant.  This Court also granted Plaintiff leave to proceed in forma pauperis.  Plaintiff's Complaint alleged that Defendants Sherrer and Willoughby ("State Defendants") violated his Eight Amendment rights by denying him medical care and failing to provide the cleaning supplies he requested to clean his cell.  Plaintiff also alleges that the State Defendants violated his Eighth and Fourteenth Amendment rights by placing him in Protective Custody  against his will.  (Comp. pp. 7,9.)

The following are the relevant and undisputed material facts.  On November 26, 2004, Plaintiff was taken from general population at Northern State Prison ("NSP") and placed in Protective Custody after he reported being in fear for his personal safety.  (Comp. p. 7, Affidavit of Chief Charles Muller ("Muller Aff.") ¶4.)  On November 29, 2004, Plaintiff was interviewed by Senior Investigator Carlos Negron, Jr. regarding the allegations that he feared for his safety.  (Muller Aff. ¶7.)  At that time, Plaintiff denied being in fear and refused placement in protective custody.  (Id.).  Plaintiff was not immediately returned to the general population because an investigation into his initial allegation of fear had to be completed.  (Muller Aff. ¶8-9.)  The investigation was completed on February 7, 2005, and it was concluded that it was safe to return Plaintiff to general population. Id.  Plaintiff was returned to General Population on February 17, 2005.  (Comp. p.7, Muller Aff. ¶11.)

On December 20, 2004, Plaintiff fell down sixteen steel steps and was injured.  (Comp. p. 9.) Medical records supplied by Defendants indicate that Plaintiff was seen by Dr. Kapcihts that same day and he was admitted to the infirmary for overnight observation. (Affidavit of George

Riehm, Ex. A.)  Plaintiff was examined on December 21, 2006 by Dr. Godinsky who determined Plaintiff should be discharged from the infirmary.  (Id.)  Plaintiff underwent x-rays on his head and back on February 3, 2005.  (Comp. p. 9.)  X-rays of Plaintiff's left shoulder and knees were taken in March 2005.  (Comp. p. 12.)

According to Defendants' submissions, NSP has adopted an Inmate Handbook which sets forth the rights and privileges of the inmates. (Declaration of Lynn Sherrer, ¶2.)  The Handbook sets forth "Administrative Remedy" procedures which have been established to give the inmate population a way to bring complaints, problems and suggestions to the attention of the Administration at NSP.  (Id.)  Inmates are instructed that inmate complaints are to be written on an Inmate Request Form ("IRF"), which are located within the housing unit, and placed in the appropriate collection box.  (Id. at ¶4.)  Inmates in Protective Custody Units are instructed to give the IRF to their housing unit Custody Supervisor or Social Worker to be placed in the proper collection box.  (Id.)  The Institutional Request Coordinator then directs the IRF to the appropriate person or department to answer the request. (Id.)  The answer is co-signed by Lynn Sherrer, in her capacity as the Administrator of NSP in Newark, NJ, and returned to the inmate. Id. If the inmate is unsatisfied with the response received to the IRF or if the problem is continuing, the inmates may submit an Administrative Remedy Form ("ARF"). (Id. ¶5.)  The ARFs may be obtained by the inmate from the Housing Unit supply, the Unit Social Worker or the Law Library upon request.  (Id.)  After completing the form, the inmate is to deposit the ARF in the collection box located in each unit. ( Id.) Inmates in Protective Custody Units are to give their ARFs to their housing unit Custody Supervisor or Social Worker to be placed in the proper collection box.  Id.  The Administrative Remedy Coordinator receives the ARF and forwards it to

the appropriate department for resolution. (Id.) Once the complaint is resolved the Department Head returns the ARF to Ms. Sherrer to ensure the form has been properly signed. (Id.) The ARF is then returned directly to the Administrative Remedy Coordinator to be returned directly to the inmate. (Id.) Inmates are expected to complete an ARF for each complaint prior to applying to the courts for relief. (Id. at 6.)

Plaintiff submitted several IRFs and ARFs related to his medical care and placement in Protective Custody. (Sherrer Aff. Ex. A.) On December 14, 2004, Plaintiff submitted an ARF asking to be released from Protective Custody. (Id.) On December 19, 2004, he submitted an IRF asking to be released from protective custody. (Id.) On December 19, 2004, Plaintiff submitted an IRF complaining that his mail was not being sent out. (Id.) Plaintiff submitted an ARF on December 26, 2004 in which Plaintiff claimed the pain medication he was given after a fall was not strong enough and that an x-ray had not been performed. (Id.) An IRF was submitted on January 3, 2005, wherein Plaintiff asked for janitorial supplies to clean his cell. (Id.) On February 15, 2005, an IRF was submitted wherein Plaintiff again asked to be released from Protective Custody. (Id.) The record before the Court also consists of several letters from Plaintiff to various Department of Corrections Staff, wherein Plaintiff informed including a December 6, 2004 letter to Defendant Willoughby asking to be released from Protective Custody. (Id.)

On October 19, 2005, Defendants filed the instant motion for summary judgment on various grounds, including that the undisputed facts show that Plaintiff has failed to exhaust available administrative remedies as to all of his claims before bringing the present action.

Defendants also move for summary judgment on the grounds that Plaintiff's claim is based solely on a theory of respondeat superior, that the State Defendants were not indifferent to Plaintiff's medical needs and that Plaintiff's transfer to Protective Custody did not violate any constitutionally protected right of the Plaintiff.

## II. DISCUSSION

**A.** **Standard of Review**[1]

Under the Federal Rules of Civil Procedure, summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and must resolve any reasonable doubt as to the existence of a genuine issue of fact against the moving party. Matsushita Elec. Indus. Co., Ltd., 475 U.S. 574, 587 (1986). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary

---

[1]Any adjudication of Plaintiff's claims based on his failure to exhaust administrative remedies will not be with prejudice to his right to re-file the claims upon subsequent exhaustion. However, the instant motion is properly characterized as one for summary judgment rather than for dismissal, as the Court has considered materials outside the pleadings. See Greer v. Smith, 59 Fed.Appx. 491, 492 (3d Cir. 2003).

judgment.  See Anderson, 477 U.S. at 247-48.  If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted.  See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Due to an understandable difference in legal sophistication, a complaint drafted by a *pro se* litigant must be held to a less exacting standard than a complaint drafted by trained counsel.  Haines v. Kerner, 404 U.S. 519 (1972).  However, "while *pro se* complaints are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment."  Ezeiruaku v. U.S., 2000 WL 1751077, *3 (E.D.Pa. 2000) (citing Shabazz v. Odum, 591 F.Supp. 1513 (M.D.Pa. 1984)).

**B.      Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a),[2] requires that a prisoner exhaust all administrative remedies available to him before he may bring a federal civil rights action with respect to prison conditions.  Within the Third Circuit, a prisoner plaintiff's failure to exhaust any administrative remedies is properly raised as an affirmative defense to a section 1983 action, which must be pleaded and proven by the defendant.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  The PLRA also mandates that administrative remedies be exhausted even if the form of relief desired by the inmate is only available through the federal courts and not through the administrative process.  Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).

---

[2]"[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).

Administrative remedies need not always be followed to the letter in order to be deemed exhausted; federal courts in specific circumstances have found substantial compliance with administrative procedures sufficient for purposes of exhaustion. See, e.g. Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding substantial compliance with administrative remedies when plaintiff had not signed or dated his grievance form); Wyatt v. Leonard, 193 F.3d 876, 880 (6th Cir. 1999) (applying substantial compliance doctrine in light of fact that § 1997e(a) was not yet law when plaintiff's complaints were made and prison officials had answered plaintiff's informal writings).  With respect to inmate handbooks, the Third Circuit has held that where the inmate handbook recites the available grievance procedure, the PLRA's exhaustion requirement applies to that procedure and requires exhaustion. Concepcion v. Morton, 306 F.3d 1347 (3d Cir.2002).

Here, Defendants' move for summary judgment based on Plaintiff's alleged failure to exhaust administrative remedies with respect to the distribution of cleaning supplies.  In support of their argument, Defendants have submitted the affidavit of Defendant Lynn Sherrer, Administrator of NSP, as well as exhibits consisting of IRFs and ARFs filed by Plaintiff. (Sherrer Aff., Ex. A.)  As discussed above, Defendants' submissions set forth the administrative remedy procedures at NSP.  Importantly, they also indicate that Plaintiff filed an IRF in connection with his request for cleaning supplies.  Plaintiff, however, failed to file an ARF as required by NSP policy.  Plaintiff had filed ARFs for other complaints, including his request to be released from protective custody.  The law is clear that Plaintiff's claim under Section 1983 with respect to distribution of cleaning supplies cannot go forward in this Court because Plaintiff

failed to use the available administrative remedies, such as those remedies provided for in the inmate handbook.  Further, it is clear that Plaintiff was aware of the mechanisms he was required to follow.  He did not give the authorities at NSP the opportunity to fully investigate whether he was in fact receiving cleaning supplies.  Plaintiff's claims with respect to failure to distribute cleaning supplies must be dismissed for failure to substantially comply with the administrative grievance procedure in place at NSP.

Defendants ask this Court to dismiss Plaintiff's Complaint in its entirety pursuant to the "total exhaustion" rule, which requires a dismissal of all claims, exhausted and unexhausted alike, when a prisoner brings an action under § 1983 which combines both exhausted and unexhausted claims.  Although several District and Circuit Courts advocate the application of the "total exhaustion rule", this Court has previously declined to follow the "total exhaustion rule"and will not do so in this case.  See Muhammad v. Sherrer, et al., Civ. No. 03-2513 (DMC) October 19, 2004 (granting summary judgment in part for failure to satisfy administrative remedies.)

**B.**     **Plaintiff's Eight and Fourteenth Amendment Claims**

Plaintiff invokes the jurisdiction of the Court pursuant to 42 U.S.C. § 1983.  Section 1983 authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  To recover under section 1983, a plaintiff must show two elements: (1) a person deprived or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144,

152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

*Medical Care Claims*

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106. State Defendants move for summary judgment on Plaintiff's Eighth Amendment claim, arguing that it must fail because supervisory liability under Section 1983 cannot be predicated solely upon a theory of respondeat superior.

Prison systems have a duty to provide prisoners with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "It is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations and internal quotations omitted). However, prison authorities are afforded considerable latitude in the diagnosis and treatment of prisoners. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d. Cir. 1979) (claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another.) As such, for a prisoner to succeed in an action claiming inadequate medical treatment, a prisoner must show more than negligence; he must show "deliberate indifference" to a serious medical need. Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)(quoting Estelle at 104-106.)

In support of his allegations, Plaintiff claims that he did not receive adequate medical attention for injuries sustained in a sixteen step fall at NSP. (Comp. p. 7.) Specifically, Plaintiff claims that he informed Defendant Willoughby that he had made numerous written attempts using the NSP "Chain of Command", and that "Lydell Sherrer" was also "included in this" and that absolutely nothing was done to get me any medical attention." (Comp. p 9.)

The Third Circuit addressed a similar situation in Durmer, where it affirmed as proper the granting of summary judgment in favor of non-physician prison administrators. 991 F.2d at 69. The Circuit reasoned that because the defendants were not physicians, they could not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who already was being treated by the prison doctor."[3] Id. The Circuit further explained its reasoning in Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), stating: "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands...[A]bsent a reason to believe (or actual knowledge) that prison doctors are mistreating (or not treating) a prisoner, a non-medical prison official...will not be chargeable with...deliberate indifference." Additionally, in Estelle, the Supreme Court instructed that mere negligence on the part of prison officials does not constitute a violation of the Eight Amendment. 429 U.S. 97, 106 (1977); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) (reiterating Estelle's distinction between deliberate indifference to serious medical needs and "mere negligence").

---

[3]The Court also noted that "respondeat superior is, of course, not an acceptable basis for liability under § 1983." Id. at 69, fn.14 (citing Polk County v. Dodson, 454 U.S. 312, 325.)

Here, the record indicates that Plaintiff was taken to the infirmary immediately following his fall down the steps. (Riehm Aff. Ex. A.) He was kept in the infirmary overnight and examined again the next day by Dr. Godinsky. Plaintiff underwent x-rays on his head and back on February 3, 2005 and x-rays of Plaintiff's left shoulder and knees were taken in March 2005. (Comp. p. 9,12.) The record further indicates that Plaintiff submitted an ARF regarding his medical treatment which was forwarded to the appropriate medical personnel. (Sherrer Aff. Ex A). It is clear from the record before the Court that Plaintiff's concerns were brought to the attention of the medical personnel at NSP. (Sherrer Aff., Ex. A.) Moreover, none of the Moving Defendants are physicians and therefore cannot be considered deliberately indifferent to Plaintiff's medical needs because they failed to directly respond to Plaintiff's medical concerns. Rather, they followed appropriate procedures and forwarded all of his complaints to medical personnel. As such, Plaintiff's Eighth Amendment claim for medical indifference against the State Defendants is dismissed.

*Protective Custody Claims*

State Defendants move for summary judgment on Plaintiff's claims that he was kept in Protective Custody against his will. State Defendants argue that summary judgment is warranted because Plaintiff's transfer to protective custody did not violate any constitutionally protected right of the plaintiff.

Plaintiff's claims related to the liberty interest of which he alleges he was deprived are those arising under the Due Process Clause of the Fourteenth Amendment and under the Eighth Amendment. The Supreme Court has held that a prisoner does not have a liberty interest in being

confined among the general population of the prison, rather than the admittedly "austere and restrictive" quarters of closed custody confinement. Hewitt v. Helms, 459 U.S. 460, 466-67 (1983). Furthermore, "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence...Accordingly, [closed custody confinement] is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." 459 U.S. at 468.

On November 26, 2004, Plaintiff was placed in Voluntary Protective Custody at his own request, due to fear for his safety. (Comp. p. 7,"Muller Aff." ¶4.) Three days later, on November 29, 2004, Plaintiff was interviewed by Senior Investigator Carlos Negron, Jr. regarding the allegations that he feared for his safety. (Muller Aff. ¶7.) At that time, Plaintiff denied being in fear and refused placement in protective custody. (Id.). According to Defendants, Plaintiff was not immediately returned to the general population because an investigation into his initial allegation of fear had to be completed. (Muller Aff. ¶8-9.) In affidavits submitted to the Court, Defendants contend that an investigation was necessary because inmates often deny that they were even in fear of their safety because they are worried about the repercussions that will come when they are removed from General Population. (Id. ¶6.) In case such as this, to release the inmate immediately to General Population might not be in the best interest of the inmate. (Id. ¶8.) An extended investigation is conducted to ascertain the true safety of the inmate. (Muller ¶6.) Only when the investigator is assured there is no threat to inmate can the investigation be concluded, a report generated, and the inmate returned to General Population. (Muller, ¶8.) Here, the investigation was not completed until February 7, 2005, approximately two months

after Plaintiff was placed in Protective Custody.. The investigation concluded that it was safe to return Plaintiff to general population. Id. Plaintiff was returned to General Population on February 17, 2005, approximately ten days after the conclusion of the investigation. (Comp. p.7, Muller Aff. ¶11.)

"Due process protection for a state created liberty interest is...limited to those situations where deprivation of that interest "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir.1997) (quoting Sandin, 515 U.S. at 484). See also Davage v. U.S., 1997 WL 180336 (E.D.Pa. Apr 16, 1997); aff'd, 35 Fed. Appx. 356 (3rd Cir.2002). Here, the Court finds that the Plaintiff has failed to articulate a protected liberty interest. First, under New Jersey law, state prisoners have no right to be assigned to any particular custody level. Hluchan, 480 F.Supp. at 108. As such, the decision of prison officials to maintain Plaintiff's confinement pending the outcome of the investigation is not something that imposed "atypical and significant hardship on the inmate." See, e.g. Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir.1997) (holding that a state prisoner's confinement in administrative segregation for 15 months did not impose an atypical and significant hardship on the prisoner). Second, this Court is mindful that "federal courts must pay great deference to the informed discretion of prison officials." Hluchan v. Fauver, 480 F.Supp. 103, 109 (D.N.J.1979); Little v. Terhune, 200 F.Supp.2d 445, 451 (D.N.J. 2002). Although Plaintiff here requested to be released from protective custody several times, prison officials made an informed decision that in was not in the best interest to return the inmate to general population until an investigation into his initial complaints could be resolved. In light of the

-13-

above, the Court finds that Plaintiff has failed to state a claim for deprivation of liberty interests pursuant to the Eight and Fourteenth Amendments and the State Defendants' motion must be granted.

## IV. CONCLUSION

For the reasons stated above, State Defendants' motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

          S/ Dennis M. Cavanaugh
          Dennis M. Cavanaugh, U.S.D.J.

Date: May 26, 2006
Original: Clerk's Office
cc: All Counsel of Record
    The Honorable Mark Falk, U.S.M.J.
    File